**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

BOARD OF TRUSTEES OF THE POLICE OFFICERS' RETIREMENT PLAN AND TRUST FUND FOR THE CITY OF MIRAMAR, Individually and On Behalf of All Others Similarly Situated,

Plaintiff,

vs.

VESTIS CORPORATION, KIMBERLY T. SCOTT, and RICKY T. DILLON,

Defendants.

Case No. 1:25-cv-4844-GHW-GWG

**ELECTRONIC DISCOVERY PROTOCOL AND ORDER**

Lead Plaintiff Board of Trustees of the Police Officers' Retirement Plan and Trust Fund for the City of Miramar ("Plaintiff") and Defendants Vestis Corporation ("Vestis") and Kimberly T. Scott (collectively, "Defendants") (together with Plaintiff, the "Parties"), shall be bound to the following Electronic Discovery Protocol (the "Protocol").

This Protocol shall be read consistently with the Rules, the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York (the "Local Rules"), the Stipulated Confidentiality Agreement and Protective Order entered in this action (ECF 74) ("Protective Order"), and any other applicable rules. Any disputes arising out of the production of documents subject to this Protocol shall be resolved according to the Rules, the Local Rules, and any other applicable orders and rules.

## I. PRESERVATION

The Parties will meet and confer regarding the scope of preservation, including custodians, data sources, date ranges, and categories of information that have been or should be preserved in connection with this litigation. The Parties will disclose categories or sources of responsive information that they have reason to believe have not been preserved or should not be preserved and will explain with specificity the reasons to support such a belief. The Parties agree such disclosures shall include whether any information is not reasonably accessible because of undue burden or cost.

## II. IDENTIFICATION OF RESPONSIVE DOCUMENTS

The Parties shall meet and confer in an effort to conduct discovery in the most efficient and effective manner. Specifically, the Parties will attempt in good faith to come to an agreement on search and culling methods used to identify responsive information including custodians, custodial and non-custodial sources, date ranges, file types, or any additional proposed method to cull documents for review (*e.g.*, search terms, and technology-assisted review ("TAR"), predictive coding, artificial intelligence). Consistent with the Court's Scheduling Order dated October 14, 2026 (ECF 75) ("Scheduling Order"), by January 12, 2027, the Parties will agree on search terms, custodians and data sources for the identification and production of materials that require such mechanisms.

### A. Sources

Consistent with the Scheduling Order, by November 13, 2026, the Parties will meet and confer regarding the custodial and non-custodial data sources likely to contain responsive information. The Parties will identify and describe any relevant electronic systems and storage locations. The Parties will also meet and confer regarding any document retention policies or

practices (*e.g.*, retention schedules or policies, auto-delete functions, routine purging, mailbox size limits), archiving systems with size limitations on the number of emails searched or exported (*e.g.*, Mimecast, Barracuda), or other policies or practices likely to impact the existence, accessibility, or ability to collect responsive documents or electronically stored information ("ESI"). The Parties will also meet and confer regarding third-party sources, if any, likely to contain discoverable information. The Parties retain the right, upon reviewing the initial production of documents, and conducting other investigation and discovery, to request that files from additional custodial or non-custodial sources be searched and to meet and confer regarding such request.

**B. Identification of Custodians**

Consistent with the Scheduling Order, by November 13, 2026, the parties shall meet and confer regarding potential custodians, including the proposed custodians' job title(s) and dates of employment. To the extent they exist, the Parties will expedite the production of organizational charts to facilitate the identification of appropriate custodians. The Parties retain the right, upon reviewing the initial production of documents, and conducting other investigation and discovery, to request that files from additional custodians be searched and to meet and confer regarding such request.

**C. Easily Targeted Responsive Documents**

Documents and categories of documents that are relevant to this action and responsive to a party's document requests, and that are regularly maintained in a known location, or in a location that is knowable upon reasonable inquiry of those with knowledge about a party's document management, shall be collected without the use of search terms or other agreed-upon advanced search methodology (*e.g.*, analytics, predictive coding, TAR, artificial intelligence). The producing party will indicate which categories of documents and data sources will be produced

with and without the use of search terms or other advanced search methodology. Where potentially responsive ESI shall be searched through the use of search terms, the Parties agree to follow the process identified below and the Parties shall meet and confer regarding any proposed deviation.

**D. Search Terms**

Where the Parties agree that potentially responsive ESI shall be searched through the use of search terms, the Parties shall use the process identified below and shall meet and confer regarding any proposed deviation. Within thirty (30) days of serving their respective responses and objections to requests for the production of documents, the producing party shall provide a list of proposed search terms, which shall contain all search terms that it believes would lead to the identification of relevant documents. To the extent reasonably possible, search terms will be crafted with input from the custodians in order to identify appropriate nomenclature, code words, etc. Within 7 days of receipt of the proposed search terms, the receiving party shall provide any additional search terms that it believes are necessary to identify responsive documents.

All proposed search terms may be subject to testing, sampling, or other methods of refinement, and the Parties agree to collaborate on the refinement of such terms, which may include the sharing of hit reports, testing, or samples as needed to reach agreement. The Parties shall agree to a set of search terms by January 12, 2027. If disputed terms still exist at the end of the meet-and-confer process, the Parties will submit those terms to the Court in the form of a joint discovery letter with a discussion of the relevance and/or burden associated with those search terms.

**E. Technology-Assisted Review**

Each Party has the right to decide on the appropriate use of technology to meet its discovery obligations. If a Party decides to use Generative AI, or TAR (collectively, "TAR") for the purpose of culling document collections, that Party shall notify the opposing Party and describe the process

and workflows, including a description of the data included and excluded from application of TAR and the validation of the results using statistical methods such as elusion sampling.

## III. PRODUCTION OF HARD-COPY DOCUMENTS – FORMAT

Hard-copy documents should be scanned as single-page, Group IV, 300 DPI TIFF images with an .opt image cross-reference file and a delimited database load file (*i.e.*, .dat). The database load file should contain the following fields: "BEGNO," "ENDNO," "PAGES," "VOLUME," and "CUSTODIAN." The documents should be logically unitized (*i.e.*, distinct documents shall not be merged into a single record, and single documents shall not be split into multiple records) and be produced in the order in which they are kept in the usual course of business. If requested for specific documents by the opposing Party, an original document containing color shall be produced as single-page, 300 DPI JPG images with JPG compression and a high quality setting as to not degrade the original image. Multi-page OCR text for each document should also be provided. The OCR software shall maximize text quality. Settings such as "auto-skewing" and "auto-rotation" should be turned on during the OCR process.

## IV. PRODUCTION OF ESI

### A. Format

Except where otherwise noted in this section, the Parties will produce ESI in single-page, black and white, TIFF Group IV, 300 DPI TIFF images. Spreadsheet and presentation type files, audio and video files, photo or graphic images, and documents with tracked changes in the metadata shall be produced in native format. Short message communications (*e.g.*, text messages (including SMS and MMS), WhatsApp, Slack, iMessage, Teams, G-Chat, Bloomberg, etc.) shall be produced in html format or RSMF with all available metadata and attachments. Except for messages that contain privileged content, the complete conversation will be produced, separated

into 24-hour increments. To the extent RSMF cannot be provided, the Parties shall meet and confer on the appropriate metadata fields and format of production. If an original document being produced in image format contains color, the document should be produced as single-page, 300 DPI JPG images with JPG compression and a high quality setting as to not degrade the original image. Where a TIFF is unreadable or compression has materially degraded the quality of the original ESI, the receiving Party may request a higher quality TIFF image or the native file, but the Parties are under no obligation to enhance an image beyond how it was kept in the usual course of business. A producing Party will not unreasonably deny such a request for a higher quality or native file. TIFFs/JPGs will show any and all text, hidden content, and images that would be visible to the reader using the native software that created the document. For example, TIFFs/JPGs of email messages will include the BCC line, and documents will display comments and hidden content. If the image does not accurately reflect the document as it was kept in the usual course of business, including all comments, edits, tracking, etc., the Parties agree to meet and confer in good faith on production format options.

If a document is produced in RSMF or in native format, a single-page Bates stamped image slip sheet stating the document has been produced in native format should be provided, with the exception of PowerPoint presentations. PowerPoint documents should be produced in native format along with single-page, 300 DPI TIFF/JPG images which display both the slide and speaker's notes. Each native file should be named according to the Bates number it has been assigned and should be linked directly to its corresponding record in the load file using the NATIVELINK field. To the extent that either party believes that specific documents or classes of documents, not already identified within this protocol, should be produced in native format, the Parties agree to meet and confer in good faith.

To the extent any Party is required, or agrees, to re-produce documents in this action that were produced or prepared originally for production in other actions or government investigations, or by a non-party, such documents may be produced in the same format in which they were produced or prepared originally for production, but should include metadata fields required by this Protocol to the extent reasonably available to the producing Party as part of the productions set. Any Party who issues a subpoena shall produce any documents obtained pursuant to that subpoena to all other Parties no less than seven (7) days following receipt of such documents.

**B. De-Duplication**

Each party shall remove exact duplicate documents based on MD5, SHA-1, or SHA-256 hash values, at the family level. Attachments should not be eliminated as duplicates for purposes of production, unless the parent email and all attachments are also duplicates. The Parties agree that an email that includes content in the BCC or other blind copy field shall not be treated as a duplicate of an email that does not include content in those fields, even if all remaining content in the email is identical. Removal of near-duplicate documents and email thread suppression is not acceptable. De-duplication will be done across the entire collection (global de-duplication) and the CUSTODIAN-ALL field will list each custodian, separated by a semicolon, who was a source of that document and the FILEPATH-DUP field will list each file path, separated by a semicolon, that was a source of that document. Should the CUSTODIAN-ALL or FILEPATH-DUP metadata fields produced become outdated due to rolling productions, an overlay file providing all the custodians and file paths for the affected documents will be produced before the substantial completion deadline specified in the Scheduling Order.

**C. Metadata**

All ESI will be produced with a delimited, database load file in standard Opticon .opt format that contains the metadata fields listed in Table 1, attached hereto. The metadata produced should have the correct encoding to enable preservation of the documents' original language.

For ESI other than email and e-docs that do not conform to the metadata listed in Table 1, such as text messages (including SMS and MMS), Instant Bloomberg, iMessage, Google Chat, MS Teams, Slack, Google Docs, etc., the Parties will meet and confer as to the appropriate metadata fields to be collected and produced.

**D. Embedded Objects**

Embedded files shall be produced as attachments to the document that contained the embedded file, with the parent/child relationship preserved. The embedded files will be marked with a "YES" in the load file under the "Is Embedded" metadata field. The Parties agree logos need not be extracted as separate documents as long as they are displayed in the parent document.

**E. Attachments**

The Parties agree that if any part of a communication or its attachments is responsive, the entire communication and attachments will be produced, except any attachments that must be withheld or redacted on the basis of privilege. The Parties will meet and confer about whether there is an appropriate basis for withholding a family document for any reason other than attorney-client or work product privilege. The attachments will be produced sequentially after the parent communication.

The Parties shall use their best efforts to collect and produce point-in-time documents that are hyperlinked to in documents and communications and stored externally to such documents and communications, including in, but not limited to, Google G Suite and Drive, Microsoft 365 and Sharepoint, etc. and treat as family documents. Documents extracted from links shall be populated

with the BEGATTACH and ENDATTACH metadata fields to show the family relationship. If documents cannot be extracted from links at the time of collection, or the documents that can be extracted are not likely to be the same version that existed the time the communication was sent (*i.e.*, point-in-time or contemporaneous version), the Parties agree to promptly meet and confer to discuss alternative methods of collection and production. The Parties will, simultaneous with service of responses and objections to initial requests for production of documents, disclose whether point-in-time documents are anticipated to be produced in this litigation.

**F. Compressed File Types**

Compressed file types (*e.g.*, .ZIP, .RAR, .CAB, .Z) should be decompressed so that the lowest level document or file is extracted.

**G. Structured Data**

To the extent a response to discovery requires production of electronic information stored in a database, the Parties will meet and confer regarding methods of production. The Parties will consider whether all relevant information may be provided by querying the database for discoverable information and generating a report in a reasonably usable and exportable electronic file.

**H. Exception Report**

The producing party shall compile an exception report enumerating any unprocessed or unprocessable documents, their file type, and the file location.

**I. Encryption**

To maximize the security of information in transit, any media on which documents are produced may be encrypted. In such cases, the producing party shall transmit the encryption key or password to the receiving party, under separate cover, contemporaneously with sending the

encrypted media.

**J. Redactions**

If documents that the Parties have agreed to produce in native format need to be redacted, the Parties will implement redactions while ensuring that proper formatting and usability are maintained. The reason for the redaction will be clearly stated on the face of the document (*e.g.*, "REDACTED PRIVILEGED"). All documents containing redactions shall indicate so in the REDACTED metadata field. Spreadsheets requiring redaction will be redacted using native redaction software and produced in native format.

## V. PRIVILEGE LOG AND TREATMENT OF PRIVILEGED MATERIALS

**A. General**

Subject to the exceptions of § V.B. below, should any documents be withheld by any Party on the basis of attorney/client privilege, work-product doctrine, or any other applicable privilege, immunity or protective doctrine (collectively, the "Privileges" and each a "Privilege"), the withholding Party will provide a log. Should any Party redact a document on the basis of any Privilege to such an extent as to effectively render the document withheld, the withholding Party will include the document in the log. Parties shall use good faith judgment in determining whether to include redacted documents on the log, and shall entertain good faith requests that redacted documents be added to the log. The log shall be prepared in accordance with the local rules and produced in a searchable Microsoft Excel spreadsheet that sets forth in separate columns the below metadata fields, where feasible. To the extent that the metadata contains Privileged information, that metadata shall be redacted in the log. The log should include, for each individual document or piece of ESI withheld, the following information to the extent applicable:

1. A uniquely assigned "PRIV ID" Number;[1]

2. The custodian;

3. All_Custodians (if applicable);

4. Any non-privileged email subject (if applicable);

5. The Sent Date/Time of email documents;

6. The Creation Date/Time of non-email documents;

7. The non-privileged File Name of non-email documents;

8. Title;

9. Last Saved/Edited By;

10. File Extension;

11. Attachment Count;

12. Author;

13. From;

14. To;

15. CC;

16. BCC;

17. An indication of which, if any, author/addresser, addressee(s), CC recipients, and BCC recipients identified is an attorney (or an employee of any Defendant's legal department), by placement of an asterisk ("*") next to the individual's name. If there is no attorney listed as the author or recipient of a document on the privilege log, the name of the attorney(s) or privilege actor(s) whose advice is being sought, provided, or reflected or whose work product is included, or reflected shall be identified;

---

[1] The "Priv ID" number for a particular Document will not change, regardless of whether a Party's log is amended from time to time.

18. The Privilege(s) or other protection claimed; and

19. The Party's factual basis for the claim, including description of the general subject matter contained in the document and the type of document (e.g., letter, email (if singular) or email thread, memorandum, handwritten notes, etc.), sufficient to allow the requesting Party to assess the claimed Privilege and/or to allow the Court to rule upon the applicability of the claimed protection. If the withheld document is an email thread the description shall describe the entire email thread and any attorneys included within the thread.

**B. Inadvertent Disclosure of Attorney-Client or Work Product Information**

The Protective Order entered in this action will address the Parties' obligations with respect to the inadvertent production of privileged documents and ESI.

**C. Documents that Need Not be Logged**

The following category of documents need not be logged:

1. Documents or portions thereof containing communications to or from outside legal counsel that are related to this litigation and that post-date the filing of the complaint on June 9, 2025; and

2. Work product of counsel, agents of counsel, or the Parties related to this litigation, and that post-dates the filing of the complaint on June 9, 2025.

3. Documents or portions thereof bearing redactions. If there is a question regarding the reasoning for a redaction, the Parties shall meet and confer in good faith to attempt to resolve the issue or clarify the reasoning for the redaction.

4. The Parties agree to meet and confer regarding other categories of information that may be excluded from logging requirements.

**D. Redactions**

A party may redact information protected by the attorney-client privilege, attorney work product doctrine, or other recognized protection or privilege; personally sensitive or identifiable information such as bank account numbers, social security numbers, personal addresses; the names of minor children and any other sensitive personally identifiable information. No Party may redact information on the basis of relevance. For redacted items that were originally ESI, all reasonably available metadata fields noted in this Protocol that do not contain Privileged or protected information will be provided and will include all non-redacted data. Any data fields may be withheld to the extent the field contains Privileged content or privacy information, including: SUBJECT and FILENAME.

**E. Challenges to Privilege**

The designation of any material or document as Privileged is subject to reasonable and good faith challenge by any Party. The following procedure shall apply to any such challenge:

1. **Meet and Confer:** A Party challenging the designation must do so in good faith and must begin the process by conferring directly with counsel for the designating Party or nonparty. Where practicable, the challenging Party must identify by production (Bates) number or PRIV ID number, the material challenged and explain the basis for its belief that the designation was not proper. When a Party seeks to challenge so many designations as to make the identification of individual designations impracticable, the challenging Party may, in good faith, provide examples of certain challenged material, by production (Bates) number or PRIV ID number, as illustrative of a larger set of designations. The designating Party or nonparty shall be provided an opportunity to review the designated material, to reconsider the designation, and, if no change in designation is offered, to explain the basis for the designation in writing. Any designating Party must respond to the challenge within seven (7) calendar days by agreeing to produce copies of all

re-designated materials with the agreed designation, or with a written response as to why such materials are not to be re-designated. If a designating party responds by providing a written response and standing on their Privilege designation, the response should include dates and times that the designating party is available to meet and confer.

**2.** **Judicial Intervention:** Where the Parties have engaged in meet and confer but failed to reach an agreement, the challenging Party may seek Court intervention by following the Court's Individual Practices. Any application to the Court shall identify the challenged material by production (Bates) number or PRIV ID number (where practicable) and set forth in detail the basis for the challenge. Until the Court rules on the challenge, all Parties shall continue to treat the materials as designated under the terms of this Protocol.

## VI. THIRD-PARTY DISCOVERY

A Party that issues a subpoena for the production of documents on a third-party (the "Issuing Party") may include a copy of this Protocol and request that third parties produce documents in accordance with the specifications set forth herein. The Issuing Party shall reproduce third-party documents to all other Parties in the format received. If a third-party production is not Bates-stamped, the Issuing Party will endorse the third-party production with unique Bates prefixes and numbering scheme prior to reproducing them to all other Parties. If requested by a third-party, the Issuing Party may apply a designation of confidentiality in a manner consistent with the Protective Order, prior to reproducing them on all other Parties.

SO ORDERED.
Dated: November 5, 2026
New York, New York

GABRIEL W. GORENSTEIN
United States Magistrate Judge

**TABLE 1: METADATA FIELDS**[2]

| Field Name | Example / Format | Description |
|---|---|---|
| **BEGNO** | ABC0000001 (Unique ID) | The Document ID number associated with the first page of a document. |
| **ENDNO** | ABC0000003 (Unique ID) | The Document ID number associated with the last page of a document. |
| **BEGATTACH** | ABC0000001 (Unique ID Parent-Child Relationships) | The Document ID number associated with the first page of the parent document. |
| **ENDATTACH** | ABC0000008 (Unique ID Parent-Child Relationships) | The Document ID number associated with the last page of the last attachment. |
| **VOLUME** | VOL001 | The name of CD, DVD, or Hard Drive. |
| **RECORDTYPE** | eMail, Attachment, Scanned Doc, eFile, Chat/Text | The record type of a document. |
| **SENTDATE** | MM/DD/YYYY | The date the email or calendar entry was sent. |
| **SENTTIME** | HH:MM | The time the email or calendar entry was sent. |
| **RECEIVEDDATE** | MM/DD/YYYY | The date the document was received. |
| **RECEIVEDTIME** | HH:MM | The time the document was received. |
| **CREATEDATE** | MM/DD/YYYY | The date the document was created. |
| **CREATETIME** | HH:MM | The time the document was created. |
| **LASTMODDATE** | MM/DD/YYYY | The date the document was last modified. |
| **LASTMODTIME** | HH:MM | The time the document was last modified. |
| **MEETING START DATE** | MM/DD/YYYY | Start date of calendar entry. |
| **MEETING START TIME** | HH:MM | Start time of calendar entry. |
| **MEETING END DATE** | MM/DD/YYYY | End date of calendar entry. |
| **MEETING END TIME** | HH:MM | End time of calendar entry. |
| **FILEPATH** | *i.e.* /JsmithPC/Users/Jsmith/Desktop | The file path from the location in which the document was stored in the usual course of business. This field should be populated for both email and e-files. |

[2] For ESI other than email and e-docs that do not conform to the metadata listed here, such as text messages, Instant Bloomberg, iMessage, Google Chat, MS Teams, Slack, *etc.*, the parties will meet and confer as to the appropriate metadata fields to be produced.

| | | |
|---|---|---|
| **FILEPATH-DUP** | *i.e.* /JSmith.pst/Inbox /Network Share/Accounting/… /TJohnsonPC/Users/TJohnson/My Documents/... | The file paths from the locations in which the duplicate documents were stored in the usual course of business. This field should be populated for both email and e-files and separated by semicolons. |
| **AUTHOR** | jsmith | The author or owner of a document from extracted metadata. |
| **LASTEDITEDBY** | jsmith | The name of the last person to edit the document from extracted metadata. |
| **FROM** | Joe Smith <jsmith@email.com> | The display name and email address of the author of an email/calendar item. An email address should always be provided. |
| **TO** | Joe Smith <jsmith@email.com>; tjones@email.com | The display name and email address of the recipient(s) of an email/calendar item. An email address should always be provided for every email if a recipient existed. |
| **CC** | Joe Smith <jsmith@email.com>; tjones@email.com | The display name and email of the copyee(s) of an email/calendar item. An email address should always be provided for every email if a copyee existed. |
| **BCC** | Joe Smith <jsmith@email.com>; tjones@email.com | The display name and email of the blind copyee(s) of an email or calendar item. An email address should always be provided for every email if a blind copyee existed. |
| **SUBJECT** | | The subject line of the email/calendar item. |
| **MESSAGE TYPE** | Appointment, Contact, Task, Distribution List, Message, etc. | An indication of the email system message type. |
| **IMPORTANCE** | Normal, Low, High | Email Importance Flag |
| **TITLE** | | The extracted document title of a document. |
| **CUSTODIAN-ALL** | Smith, Joe; Doe, Jane | All of the custodians of a document from which the document originated, separated by semicolons. |
| **SOURCE** | Computer, Mobile Phone, Email, Network Share, Slack, WhatsApp, Teams, Database Name, etc. | The source from which the document was collected. |
| **ATTACH COUNT** | Numeric | The number of attachments to a document. |
| **FILEEXT** | XLS | The file extension of a document. |
| **FILENAME** | Document Name.xls | The file name of a document. |
| **FILESIZE** | Numeric | The file size of a document (including embedded attachments). |

| | | |
|---|---|---|
| **TRACK CHANGES** | Yes or No | The yes/no indicator of whether tracked changes exist in the file. |
| **IS EMBEDDED** | Yes or No | The yes/no indicator of whether a file is embedded in another document. |
| **HASH** | | The MD5 or SHA-1 Hash value or "de-duplication key" assigned to a document. The same hash method (MD5 or SHA-1) should be used throughout production. |
| **CONVERSATION INDEX** | | ID used to tie together email threads. |
| **CHANNEL NAME** | Strategic Forecasting Team Chat | Title assigned to group chat. |
| **CHAT GROUP ID / CHAT CONVERSATION ID (X-RSMF-EVENTCOLLECTIONID)** | | If available, identified members of a chat family, including any chat attachments. |
| **CHAT START DATE/TIME (X-RSMF-BEGINDATE)** | MM/DD/YYYY HH:MM | Date and time (ISO8601) of first event in chat file. |
| **CHAT END DATE/TIME (X-RSMF-ENDDATE)** | MM/DD/YYYY HH:MM | Date and time (ISO8601) of last event in chat file. |
| **X-RSMF-Participants** | Smith, Joe; Doe, Jane | String of names that are present in the conversation in the RSMF file. |
| **X-RSMF-EventCollectionID** | | ID used to tie together chat threads. |
| **X-RSMF-EventCount** | | The number of short message events captured within the file. |
| **X-RSMF-Application** | Slack, Text Message, iMessage, etc. | Identifies the application source of the data. |
| **X-RSMF-AttachmentCount** | | Number of all attachments present in the RSMF file. |
| **REDACTED** | Yes or Blank | If a document contains a redaction, this field will display 'Yes'. |
| **TIMEZONE PROCESSED** | PST, CST, EST, etc | The time zone the document was processed in. **NOTE:** This should be the time zone where the documents were located at time of collection. |
| **NATIVELINK** | D:\NATIVES\ABC000001.xls | The full path to a native copy of a document. |

| | | |
|---|---|---|
| **FULLTEXT** | D:\TEXT\ABC000001.txt | The path to the full extracted text of the document. There should be a folder on the deliverable, containing a separate text file per document. These text files should be named with their corresponding Bates numbers. **Note**: Emails should include header information: author, recipient, cc, bcc, date, subject, etc. If the attachment or e-file does not extract any text, then OCR for the document should be provided. |